**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TORREY PRICHARD, | Case No. 1:19-cv-573 |
| Plaintiff, | |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MEMORANDUM OF OPINION AND DECISION**

Plaintiff Torrey Prichard filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. The parties have consented to disposition of this matter by the magistrate judge pursuant to 28 U.S.C. §636. (Doc. 6). For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2017, Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging a disability onset date of July 2, 2012, due to physical impairments. (Tr. 22-25).[1] After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On December 21, 2018, ALJ Peter Boylan held a hearing at which Plaintiff

---

[1] Plaintiff filed previous applications for DIB and SSI on August 22, 2013, which were denied administratively and by Administrative Law Judge (ALJ) Andrew Gollin, after a hearing, in a November 20, 2015 decision (Tr. 228-66, 274-91).

appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On February 8, 2019, the ALJ denied Plaintiff's application in a written decision. (Tr. 12-24). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was 54 years old on the alleged onset date of disability. (Tr. 22). He had a high school education, and past relevant work as an electrician. Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "inflammatory arthritis; chronic obstructive pulmonary disease (COPD); degenerative disc disease; sleep-related breathing disorder and obesity." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He is further limited to standing/walking for no more than 30 minutes at one time; no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional balancing, stooping, crouching, kneeling, and crawling; no more than frequent gross manipulation, fine manipulation and feeling with bilateral upper extremities; no more than frequent gross manipulation, fine manipulation and feeling with the bilateral upper extremities; he must avoid work involving concentrated exposure to extreme cold, extreme heat, or high humidity; and no work involving concentrated exposure to fumes, odors, dusts, gases or poor ventilation.

(Tr. 19). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform,

including such jobs as wireless harness assembler, and electronic assembler. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to properly apply res judicata and collateral estoppel; 2) improperly weighing the medical evidence; 3) assessing Plaintiff's credibility, pain and subjective complaints; and 4) committing various vocational errors. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is substantially supported

*1. Res Judicata and Collateral Estoppel*

Plaintiff argues first that the ALJ erred because he did not adopt the findings from prior ALJ's decision. In this regard, Plaintiff contends that had the ALJ applied the principles of *res judicata* and collateral estoppel to ALJ Gollin's 2015 decision that Plaintiff had no transferrable skills, Plaintiff would have been disabled under grid Rule 202.06. Plaintiff's contention is misplaced.

The United States Court of Appeals for the Sixth Circuit holds that the principles of *res judicata* can be applied against the Commissioner. *See Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), and Social Security Acquiescence Rulings (AR) 98-3(b) and 98-4(6) (Tr. 15-16). When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond*, 126 F.3d at 842 (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* Thus, under *Drummond,* "the burden is on the

Commissioner to prove changed circumstances and therefore escape the principles of *res judicata.*" *Id.* at 843.

Here, in the first decision, ALJ Gollin found that transferability of skills was not material. (Tr. 284). In this regard the ALJ decision states:

> 9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable skills or not.

(Tr. 284).

Plaintiff, however, argues that the vocational expert specifically testified that Plaintiff's past work did not produce transferrable skills and Plaintiff argues that the ALJ adopted the VE's findings. Contrary to this finding, the ALJ did not make such finding. As noted above, the ALJ found that the transferability of skills was not material. (Tr. 284, finding #9).

As noted by the Commissioner, *Dennard* and *Drummond* did not involve the issue of transferable skills. In *Dennard*, the Sixth Circuit held that, where the final decision of the agency after a hearing on a prior disability claim contains a finding of the demands of a claimant's past relevant work, the agency may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding. 907 F.2d at 600. Similarly, *Drummond* did not involve the issue of transferable skills, but rather, a claimant's RFC. In *Drummond,* the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. 126 F.3d 837, 842 (6th Cir. 1997), see also 42 U.S.C. § 405(h) ("The

findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). *Drummond* states that "[a]bsent evidence of improvement in a claimant's condition," the findings of an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842.

Here, the ALJ properly applied the principles of res judicata because there was no prior finding that Plaintiff did not have transferrable skills. As noted above, ALJ Gollin found that transferability was skills was not material. (Tr. 284). For these reasons, Plaintiff's first assignment of error is not well-taken.

*2. Evaluation of Medical Evidence*

Plaintiff next objects to the ALJ's refusal to admit medical records which were received less than five days prior to the hearing date. More specifically, Plaintiff argues that the ALJ failed to properly evaluate his subjective symptoms and also did not adequately assess the medical evidence from Dr. Hiltz, or the December 2015 assessment form from his treating physician, Dr. Mehta, which he submitted to the ALJ in December 2018 and January 2019. (Tr. 29, 224-26).

Under 20 C.F.R. § 404.935(a), a claimant "must inform us about or submit any written evidence ... no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If a claimant fails to comply with this requirement, the ALJ may decline to consider or obtain the evidence, unless one of the exceptions in 20 C.F.R. § 404.935(b) applies. § 404.935(a). Where the ALJ has not yet issued a decision, the ALJ will accept the evidence where the claimant did not comply with § 404.935(a) because: (1) the claimant was misled by some action of the agency; (2) the claimant had

7

a physical, mental, educational, or linguistic limitation that prevented the claimant from informing the agency about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from informing the agency about or submitting the evidence earlier. 20 C.F.R. § 404.935(b)(1)-(3). Examples of unavoidable circumstances include: (1) the claimant was prevented from contacting the agency due to his or her own serious illness; (2) there was a death or serious illness in the claimant's immediate family; (3) important records were destroyed or damaged by fire or other accidental cause; or (4) the claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing. 20 C.F.R. § 404.935(3)(i)-(iv).

Here, Plaintiff's counsel submitted additional medical evidence, including the form completed by Dr. Mehta, to the ALJ at the December 18, 2018 hearing, the ALJ informed him that none of the exceptions to the five-day rule applied and that he would not be admitting that evidence to the record. (Tr. 224-26). Plaintiff's counsel stated that the form completed by Dr. Mehta in December 2015 had already been submitted to the Appeals Council with plaintiff's request for review of ALJ Gollin's decision, but also acknowledged that it was not in the record before ALJ Boylan. (Tr. 225).

As noted by the Commissioner, because Plaintiff did not submit the evidence to the ALJ five days prior to the hearing in compliance with the 5-day rule, and because he did not demonstrate that his untimeliness was excusable under the relevant regulation, the ALJ reasonably declined to consider it. 20 C.F.R. § 404.935. *See also Albert v. Commissioner of Social Security*, no. 2:18-cv-907 (S.D. Ohio E.D.) 2019 WL 2912091 at *4 (July 8, 2019). Accordingly, the ALJ's decision is substantially supported in this regard.

8

Additionally, with respect to the ALJ's evaluation of the medical evidence, Plaintiff also complains that the ALJ erred in his consideration of the state agency physicians' opinions. Here, with respect to the opinion evidence, the ALJ gave significant consideration to the state agency consultants who provided RFC assessments in 2017. (Tr. 22, Tr. 294-305, 307-319, 320-330, 331-341). Citing *Blakely v Commissioner*, 581 F.3d 399, (6th Cir. 2009), Plaintiff, argues that the ALJ improperly relied on these opinions and failed to consider other medical evidence submitted after this date.

In *Blakely,* the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (*Id.,* at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by *Blakely's* treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis,* such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 409 (quoting *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 547 (6th Cir. 2004)). Under *Blakely,* then, an ALJ may choose to credit the opinion of a

9

consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis. Swartz v. Astrue,* No. 10–605, 2011 WL 4571877, at *8 (S.D. Ohio Aug. 18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir. 2009)).

In this case, the ALJ considered and discussed the opinions from the state agency reviewing physicians, noting that they were based on information contained in the record at the time of the state agency reconsideration determination in June 2017. (Tr. 327, 338). The ALJ also recognized that no medical records generated or provided after that date were considered by the state examiners and that they never treated or examined the claimant. (Tr. 22). Nonetheless, the ALJ stated that he reviewed the new evidence and determined that it does not differ greatly from the prior evidence of record. (Tr. 22). As such, the ALJ found that the state agency's consultants' opinion was consistent with the medical evidence of record, and therefore, entitled to significant consideration.

The ALJ's decision in this regard is substantially supported by the record evidence. *See also Turner v. Comm'r of Soc. Sec.*, 2018 WL 3544933 (S.D. Ohio July 24, 2018) ("[a]lthough [the state agency physicians] did not have access to the entire record at the time they authored their opinions, the ALJ properly considered, discussed, and analyzed more recent evidence in the record rather than adopting their opinions

wholesale without further evidentiary review."). *Kidder v. Comm'r of Soc. Sec.*, No. 1:18-CV-661, 2020 WL 1080413, at *4 (S.D. Ohio Mar. 6, 2020).

*3. Credibility*

Plaintiff also claims that the ALJ's credibility finding is not substantially supported. In this regard, Plaintiff complains that the ALJ erred because he found the lack of objective findings to support his complaints of disabling pain, but did not review the records from Drs. Hiltz and McDonough, or the form from Dr. Mehta. Notably, Plaintiff asserts that the ALJ's credibility assessment failed to consider Plaintiff's pain medication and improperly considered his daily activities and complaints of chronic pain.

The ALJ's assessment, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

    1. Daily activities;
    2. The location, duration, frequency, and intensity of pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

11

      6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
      7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

As stated, the primary distinction between SSR 16-3p and the former SSR 96-7p is the elimination of the word "credibility" and clarifying that the focus of the ALJ's evaluation should be on the "consistency" of subjective complaints with the record as a whole. The elimination of the word "credibility" from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D.

Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, it is clear that a reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, as detailed above, with respect to the records from Drs. Hiltz and McDonough, or the form from Dr. Mehta, this evidence was submitted less than five days before the hearing and the ALJ reasonably declined to consider it. Furthermore, the record provides ample support for the ALJ's finding that the Plaintiff's complaints of debilitating pain were not consistent with the record. (Tr. 20-22). *See Walters*, 127 F.3d at 532 ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.").

Furthermore, in evaluating subjective allegations, the ALJ considered that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence of record. (Tr. 20-22). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). In this regard, he ALJ noted that Plaintiff had been diagnosed with rheumatoid arthritis. He further noted that treatment records from 2016 and 2017 indicate that Plaintiff showed improvement with Actemra infusions, his condition was stable and morning stiffness resolved in less than an hour. (Tr. 21). The ALJ also considered that Plaintiff's course of medical treatment and use of medication, as well as other measures, to alleviate the impact of his impairments. (Tr. 20-22). He noted that Plaintiff alleged that when he had pain from arthritis, he had to lie down, no longer than one hour, and also stated that he used a rescue inhaler if he needed to catch his breath. (Tr. 20). He considered that Plaintiff reported that his breathing machine helped with sleep (Tr. 21).

The ALJ also noted Plaintiff's noncompliance with treatment recommendations. (Tr. 21). In this regard, Plaintiff's treatment records indicated that, against the advice of his physician, he has been primarily relying on opioids for pain relief and continues to smoke. Treatment records indicated that Plaintiff was repeatedly told to stop smoking and that continued tobacco use would result in an increased risk of complications including deterioration in control of autoimmune disease, cardiovascular complication, malignancy and death. (Tr. 779, 785, 791, 796, 801). The ALJ properly considered that Plaintiff was advised to discontinue smoking on many occasions, yet he continued his use of tobacco products, which also undermined his complaints of disabling respiratory

14

problems. (Tr. 28–29, 286, 289, 297–298, 387–388). See *Brumett v. Comm'r of Soc. Sec.,* 1:07CV955, 2009 WL 690250 (S.D.Ohio Mar.11, 2009) (the failure to stop smoking against medical advice can be properly considered in assessing credibility). *See also Sias v. Secretary of Health and Human Services,* 861 F.2d 475, 480 (6th Cir.1988) (claimant's failure to stop smoking was inconsistent with allegations of disabling pain and limitation).

The ALJ also properly considered Plaintiff's daily activities. The ALJ noted that Plaintiff testified that he sometimes cooked, washed dishes and swept, when he was physically able. (Tr. 20). The ALJ recognized that Plaintiff testified that he was able to do laundry, go grocery shopping, occasionally eat out at restaurants and that he used his cell phone to check the weather or watch YouTube. (Tr. 20). While Plaintiff may not have engaged vigorously in his activities, such endeavors are not indicative of an individual incapable of performing any type of work. *See Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 173 (6th Cir. 2016) ("The ALJ contrasted Sorrell's ability to do daily activities with her reports of pain—noting that Sorrell is "able to prepare simple meals, perform various household duties with breaks, handle personal care, drive, and shop"); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability).

The court "may not disturb" an ALJ's subjective symptom evaluation "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). While Plaintiff may disagree with the ALJ's subjective symptom evaluation, he fails to demonstrate a basis for overturning the finding, especially given the great deference that an ALJ's finding is

entitled to on review. See *Walters*, 127 F.3d at 531. Accordingly, the ALJ's decision is substantially supported in this regard.

*4. Hypothetical Question*

Plaintiff's final assignment of error asserts that the ALJ committed various vocational errors. Namely, Plaintiff argues that the ALJ erred because if Dr. Mehta's opinion had been adopted, the identified jobs would be precluded, and he also again asserts that he did not have transferable skills. Plaintiff further contends that the ALJ's hypothetical questions to the vocational expert were improper because Plaintiff is not capable of standing and/or walking for six hours a day to do light work and is also not capable of using his hands frequently to sustain work for 40 hours a week. Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993). The ALJ was not required to ask about the impact of the opined limitations that he did not accept. See *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922 (6th Cir. 1987).

Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that he had limitations greater than those

16

reflected in the ALJ's hypothetical question and eventual RFC finding. Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and this case is **CLOSED.**

                                              _s/Stephanie K. Bowman_
                                              Stephanie K. Bowman
                                              United States Magistrate Judge